UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRANCISCO PORTILLO SARAVIA,

*Plaintiff*,

v.

YUAN PROFIT, INC., *et al.*,

*Defendants*.

Civil Action No. 20-232 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Francisco Portillo Saravia has moved for a default judgment against Defendants in this action, Yuan Profit Inc. ("Yuan Profit"), Jun Ling Xu, Oscar Xu, and Rui Yu. Dkt. 35. For the reasons stated below, the Court will **GRANT** the motion in part and **DENY** it without prejudice in part.

### I. BACKGROUND

Yuan Profit, Inc. is a District of Columbia corporation, which does business as New Big Wong restaurant. Dkt. 22 at 2 (Am. Compl. ¶ 6). Yuan Profit is owned and operated by Defendants Jun Ling Xu and Rui Yu. *Id.* at 2–3 (Am. Compl. ¶¶ 6–7, 9). Oscar Xu, whose relationship with Jun Ling Xu and Rui Yu is unclear, but who shares an address with at least Jun Ling Xu, is also a New Big Wong managerial-level employee. *Id.* at 2 (Am. Compl. ¶¶ 7–9).[1]

Francisco Portillo Saravia worked in the New Big Wong kitchen from October 16, 2007 through January 3, 2020. *Id.* at 3–4 (Am. Compl. ¶¶ 11–12). He alleges that between January 1,

---

[1] Although the Amended Complaint alleges that Jun Ling Xu, Rui Yu, and Oscar Xu all live at the same address in the District of Columbia, Dkt. 22 at (Am. Compl. ¶¶ 7–9), in other filings Jung Ling Xu and Oscar Xu have represented that they reside, together, at a separate address in Maryland, Dkt. 27; Dkt. 28.

2017 and January 3, 2020, he "typically and customarily" worked seventy-one hours per week. *Id.* (Am. Compl. ¶ 15); *see also id.* (Am. Compl. ¶ 17).[2] He further alleges that during this period he was paid a semi-monthly salary that amounted to less than the District of Columbia minimum wage and that did not account for the thirty-one hours of overtime he worked each week. *Id.* at 3–4 (Am. Compl. ¶¶ 17–23).

Saravia filed his original complaint in this action on January 28, 2020, Dkt. 1 (Compl.), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*, and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.* That complaint named Yuan Profit, Jun Ling Xu, and Oscar Xu as Defendants. Dkt. 1 at 2 (Compl. ¶¶ 6–8). It alleged that Jun Ling Xu owned Yuan Profit (doing business as New Big Wong) and set Saravia's compensation, and that both Jun Ling Xu and Oscar Xu supervised and controlled Saravia's work, set his hours, and tendered his pay. *Id.* at 2, 4 (Compl. ¶¶ 7, 25–34).

Defendants answered on June 18, 2020, Dkt. 11, and subsequently filed an amended answer on September 25, 2020, Dkt. 18. Although the amended answer was filed on behalf of only the initial three Defendants—Yuan Profit, Jun Ling Xu, and Oscar Xu, *id.* at 10—it avers that Jun Ling Xu's wife, Rui Yu, was "the owner, president and manager of Yuan Profit, Inc., and its restaurant business during the relevant time period" and that Rui Yu, rather than Jun Ling Xu or Oscar Xu, supervised New Big Wong's employees and set their hours and pay, *id.* at 2, 4–5 (Am. Answer ¶¶ 7, 25–34). Shortly after filing the amended answer, counsel for Defendants

---

[2] Although Saravia allegedly worked at New Big Wong for over twelve years, his allegations pertain only to the time period beginning January 1, 2017.

withdrew, and Defendants began representing themselves pro se. Dkt. 19; Min. Order (Oct. 13, 2020).[3] Two months later, on November 16, 2020, Saravia filed an amended complaint that was identical in almost all respects to the original complaint, but it added Rui Yu as a Defendant and included her in the substantive allegations. Dkt. 22 (Am. Compl.).

At this point things ground to a halt. Despite being named in the amended complaint and served with the summons and complaint, Dkt. 24, Rui Yu never answered or moved in response to the complaint and never otherwise appeared in the case, *see* Min. Order (Apr. 1, 2021). Nor did the other Defendants make any effort to advance the litigation. In particular, Yuan Profit and Oscar Xu failed to respond to Saravia's discovery requests. Dkt. 21 at 1. So Saravia moved to compel and asked the Court to award costs and fees as discovery sanctions. *Id.* Saravia's motion asserted that he had sent Yuan Profit and Xu written discovery requests and followed up "diligently" on those requests, all to no avail. *Id.* It further noted that in the Court's Minute Order granting the motion of Defendants' counsel to withdraw, the Court had directed Defendants to confer with Saravia's counsel regarding overdue discovery requests. *Id.* at 1–2. Since that time, Saravia's counsel had attempted to contact Defendants but had received no response. *Id.* at 2. Defendants never responded to the motion to compel, nor did they appear at the hearing on that motion. Min. Entry (Apr. 14, 2021). At the hearing, the Court ordered Yuan Profit and Oscar Xu to comply with their discovery obligations and granted Saravia's motion for attorney's fees. *Id.* The Court further ordered Defendants to notify the Court by May 7, 2021 whether they intended to defend this action and to respond to all outstanding discovery requests

---

[3] This left Yuan Profit Inc. unrepresented, as Jun Ling Xu, and Oscar Xu (who are not lawyers) could not represent the corporation pro se. *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 556 (10th Cir. 2001) ("As a general matter, a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se.").

by May 14, 2021. *Id.* Finally, the Court gave Saravia permission to move for sanctions and for a default judgment if Defendants remained unresponsive. *Id.*

On May 5, 2021, Defendants Oscar Xu and Jun Ling Xu—but not Rui Yu (who still had yet to appear) or Yuan Profit (which is a corporation without a lawyer)—each filed an identical, one-sentence notice that stated: "The Defendants, Yuan Profit, Inc. ('Yuan Profit'), Jun Ling Xu ('Xu'), and Oscar Xu ('Oscar'), collectively referred to as 'Defendants,' intend to defend this civil action." Dkt. 27; Dkt. 28.[4] Notwithstanding their asserted intent to defend, Defendants took no action on Saravia's discovery requests. Dkt. 32 at 2.

At the end of June, Saravia submitted an affidavit of default against Rui Yu, who still had not answered or appeared. Dkt. 29. The Clerk of Court entered default the next day. Dkt. 30.

Another month passed with no forward progress, so the Court ordered Saravia to provide a status update, Min. Order (July 30, 2021), which he did on August 8, 2021, Dkt. 32. According to Saravia, Yuan Profit and Oscar Xu had failed to comply with the Court's April 14, 2021 Order regarding discovery. *Id.* at 2. In addition, Saravia reported that he had served Jun Ling Xu with interrogatories on June 23, 2021 and that he did not respond. *Id.* Saravia, accordingly, moved to compel responses and for an Order of Default as to Yuan Profit and Oscar Xu. *Id.* at 3. The Court granted Saravia's motion to compel as to Jun Ling Xu but denied his request for default without prejudice. Dkt. 33 at 1. The Court cautioned: "Defendants Yuan Profit, Inc., and Oscar Xu shall be afforded one final opportunity to respond to Plaintiff's outstanding discovery requests," and "[i]f Defendants fail to comply with this deadline, the Court will allow Plaintiff to

---

[4] Although Jun Ling Xu and Oscar Xu both purported to speak on Yuan Profit's behalf, as noted, they could not lawfully do so as non-attorneys.

renew his motion for sanctions, including his request for a default judgment against Defendants." *Id.* at 1–2.

The Court did not hear from Saravia or Defendants for nearly a year. So it set a status conference for August 17, 2022. Min. Order (July 28, 2022). Four days later, Saravia moved for a default judgment against all Defendants—against Rui Yu for failing to appear and against Jun Ling Xu, Oscar Xu, and Yuan Profit for failing, yet again, to comply with their discovery obligations and the Court's orders. Dkt. 35 at 2. Defendants failed to appear for the status conference, and the Court indicated that it would consider Saravia's motion in due course, whether or not Defendants responded. Aug. 17, 2022 Hrg. Tr. (Rough at 6).

## II.  LEGAL STANDARD

Although courts generally favor resolving disputes on their merits, default judgments are appropriate "when the adversary process has been halted because of an essentially unresponsive party." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (internal citation omitted). The Federal Rules of Civil Procedure accordingly empower district courts to enter default judgment against defendants who fail to appear and, in some circumstances, against defendants who flout discovery orders. Fed. R. Civ. P. 55(b) and 37(b)(2)(A)(vi). The process and legal standard differs somewhat between the two scenarios.

Starting with defendants who fail to appear, "[o]btaining a default judgment is a two-step process which 'allows the defendant the opportunity to move the court to set aside the default before the court enters default judgment.'" *Denson v. D.C. Restaurant Holdings*, No. 19-1609, 2021 WL 4988994, at *1 (D.D.C. Oct. 27, 2021) (quoting *Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 239 n.1 (D.D.C. 2007)). First, the plaintiff must request that the Clerk of Court enter default against a party who "has failed to plead or

otherwise defend." Fed. R. Civ. P. 55(a). The Clerk's entry of default establishes that the defendant is liable for the well-pleaded allegations in the complaint. *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014). The plaintiff must then apply to the court for a default judgment. Fed. R. Civ. P. 55(b). To obtain a default judgment, the plaintiff "must prove his entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (internal quotation marks, citations, and alterations omitted). Even if a defendant has defaulted, "the plaintiff is entitled to a default judgment only if the complaint states a claim for relief." *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 27 (D.D.C. 2008) (internal quotation marks and citations omitted).

"When ruling on a motion for default judgment, a court is 'required to make an independent determination of the sum to be awarded.'" *Denson*, 2021 WL 4988994, at *2 (quoting *Fanning v. Permanent Sol. Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009)). A court has "considerable latitude" in making this determination." *Ventura*, 134 F. Supp. 3d at 103 (internal quotation marks and citation omitted). It may, but need not, hold a hearing to determine damages. Fed. R. Civ. P. 55(b)(2). Either way, the court must "ensure that there is a basis for the damages specified in the default judgment." *Ventura*, 134 F. Supp. 3d at 103 (cleaned up).

Turning from the absent to the obstinate, Federal Rule of Civil Procedure 37 provides courts with a variety of tools to compel discovery and to sanction those who resist their orders. Under Rule 37(b), a court may impose sanctions on a party who "fails to obey an order to provide or permit discovery," including an order on a motion to compel. Fed. R. Civ. P. 37(b)(2)(A). The rule "requires the moving party to demonstrate . . . (1) [that] there is a discovery order in place, and (2) that the discovery order was violated." *Embassy of Fed.*

6

*Republic of Nigeria v. Ugwuonye*, 292 F.R.D. 53, 56 (D.D.C. 2013). If these requirements are met, the court may order such sanctions it deems to be "just" under the circumstances, including but not limited to (1) "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action;" (2) "prohibiting the disobedient party from supporting or opposing designated claims or defenses;" (3) "striking [the] pleadings in whole or in part;" (4) "staying further proceedings until the order is obeyed;" (5) "dismissing the action or proceeding in whole or in part;" (6) "rendering a default judgment against the disobedient party;" or (7) "treating as contempt of court the failure to obey" the order. Fed. R. Civ. P. 37(b)(2)(A).

Although district courts have broad discretion to issue discovery sanctions under Rule 37, *Bonds v. District of Columbia*, 93 F.3d 801, 807 (D.C. Cir. 1996), the D.C. Circuit has cautioned that a default judgment is a "sanction of last resort," *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) (internal quotation marks and citation omitted). A court should impose this extraordinary remedy only when "less onerous methods" obviously would prove futile or ineffective, although the Court need not exhaust lesser sanctions if the circumstances merit a default. *Id.* And "[b]ecause disposition of cases on the merits is generally favored," a court must "explain its reason for issuing a default judgment rather than a lesser sanction." *Id.*

Mindful of these considerations, the court of appeals has set forth "three basic justifications [to] support the use of dismissal or default judgment as a sanction for misconduct." *Id.*; *see also Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1074–79 (D.C. Cir. 1986). First, the court "may decide that the errant party's behavior has severely hampered the other party's ability to present his case." *Webb*, 146 F.3d at 971. Second, the court "may take account of the prejudice caused to the judicial system when the party's misconduct has put 'an intolerable burden on a district court by requiring the court to modify its own docket and operations in order

7

to accommodate the delay.'" *Id.* (quoting *Shea*, 795 F.2d at 1075).  And third, the court "may consider the need 'to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future.'" *Id.* (quoting *Shea*, 795 F.2d at 1077).  A default judgment ordered "pursuant to any of these considerations must be based on findings supported by the record." *Id.* (citing *Bonds*, 93 F.3d at 809).

### III.  ANALYSIS

**A.      Motion for Default Judgment Against Rui Yu**

Because the Clerk has entered default against Rui Yu in this case, Dkt. 30, Rui Yu is subject to the well-pleaded allegations in Saravia's complaint, *Providence Constr.*, 304 F.R.D. at 35.  Here, Saravia has adequately alleged that Defendants, Rui Yu among them, willfully failed to pay him minimum and overtime wages, as the FLSA, the DCMWA, and the DCWPCL require.  Dkt. 22 at 1 (Am. Compl. ¶ 2).  He has also alleged that Rui Yu was his "employer" under the FLSA and the DCMWA, because, among other things, she owned at least part of New Big Wong, supervised Saravia's work, had the power to hire and fire him, and set his rate of pay. *Id.* at 2–3, 4 (Am. Compl. ¶¶ 9, 26–34); *see Orellana v. NBSB Inc.*, 332 F. Supp. 3d 252, 263 (D.D.C. 2018) (explaining the "economic reality" test for whether an individual is an "employer" and stating that "[a]n employee may have more than one employer for purposes of FLSA and DCMWA liability, and a corporate officer may qualify as an employer along with the corporation if the officer has operational control of the corporation's enterprise").

Both the FLSA and the DCMWA require employers to pay their employees specified, minimum hourly wages.  29 U.S.C. § 206(a)(1); D.C. Code § 32-1003(a).  At all relevant times, the FLSA minimum wage was $7.25 per hour.  *See* 29 U.S.C. § 206(a)(1)(C).  The District of Columbia minimum wage has increased over the past several years: it was $11.50 per hour from

July 1, 2016 until June 30, 2017; $12.50 per hour from July 1, 2017 until June 30, 2018; $13.25 per hour from July 1, 2018 until June 30, 2019; and $14.00 per hour from July 1, 2019 until June 30, 2020.  D.C. Code § 32-1003(a)(5)(A).  These statutes also guarantee covered employees overtime pay equal to one and one-half times their regular hourly wage for each hour they work per week in excess of a forty-hour workweek.  29 U.S.C. § 207(a)(1); D.C. Code § 32-1003(c).  If an employee has not been paid the wages he is owed—either regular pay or overtime—he has a right under both federal and District of Columbia law to bring a civil action for unpaid wages and liquidated damages.  29 U.S.C. § 216(b); D.C. Code § 32-1308(a)(1)(A).

As for unpaid wages, Saravia may recover the difference between what he is statutorily entitled to and the actual wages he received.  D.C. Code § 32–1308(a)(1)(A)(i).  To demonstrate the latter, Saravia has provided a declaration and detailed financial schedules that calculate these wages as follows:

- Saravia asserts that he worked "approximately seventy-one hours per week" during the period in question.  Dkt. 35-1 at 1 (Portillo Saravia Decl. ¶ 6).

- He was paid a semi-monthly salary during this period that increased over time in the following manner:

    o January 2, 2017 – April 2, 2017: $1,150.00 semi-monthly;

    o April 3, 2017 – January 28, 2018: $1,275.00 semi-monthly;

    o January 29, 2018 – January 5, 2020: $1,300 semi-monthly.  Dkt. 35-2 at 1–5; Dkt. 22 at 3 (Am. Compl. ¶ 17) (setting forth approximate dates).

- Saravia converts these semi-monthly numbers into an effective hourly wage according to the following formula:

    o The semimonthly salary is converted into a weekly salary using a conversion coefficient published by the Department of Labor of 0.4615.[5]  Dkt. 35 at 7 (citing

---

[5] This coefficient seems correct to the Court: an employee paid semi-monthly is paid 24 times per year (twice per month for twelve months), and there are 52 weeks in a year, meaning that each week constitutes 0.4615 of a pay period: $24/52 = 0.4615$.

> Dkt. 35-4, U.S. Dep't of Labor, *Coefficient Table for Computing Extra Half-Time for Overtime*).

- o  The weekly rate is then converted into an hourly rate by diving it by 71—what Saravia attests to be his weekly hours.  Dkt. 35 at 7; Dkt. 35-2 at 1–5.

- Based on these calculations, Saravia's hourly rate is as follows:

| **Dates** | **Semi-monthly Salary** | **Weekly Salary** | **Effective Hourly Rate** |
|---|---|---|---|
| Jan. 2, 2017 – Apr. 2, 2017 | $1,150 | $1,150 * 0.4615 = $530.73 | $530.73 / 71 = $7.48 |
| Apr. 3, 2017 – Jan. 28, 2018 | $1,275 | $1,275 * 0.4615 = $588.41 | $588.41 / 71 = $8.29 |
| Jan. 29, 2018 – Jan. 5, 2020 | $1,300 | $1,300 * 0.4615 = $599.95 | $599.95 / 71 = $8.45 |

Saravia then makes the below calculations to determine the difference between what he was statutorily owed in a given week and what he was paid:

- He multiplies the applicable minimum wage by 40 hours to determine the regular wages he was owed.  Dkt. 35 at 8; Dkt. 35-2 at 1–5.

- He then multiplies the hours he worked above 40 (31 each week, given his total hours of 71) by the minimum wage, and multiples that value by 1.5 to account for the statutory overtime premium.  Dkt. 35 at 8; Dkt. 35-2 at 1–5.

- Finally, he adds these numbers together (regular wages owed + overtime wages owed) and subtracts what he was in fact paid.  Dkt. 35 at 8; Dkt. 35-2 at 1–5.

So, for a given week during the first time period—January 1, 2017 through March 31, 2017—the calculation is as follows:

- $11.50 (the D.C. minimum hourly wage) * 40 hours = $460.00

- $11.50 * 1.5 * 31 (Saravia's overtime hours) = $534.75

- $460.00 + $534.75 – $530.73 (the amount Saravia was actually paid each week) = $464.02[6]

The Court agrees with this methodology. The regular wage calculation is straightforward and requires no elaboration. As for overtime, both the FLSA and the DCMWA provide that an employee is to be paid one and one-half times the employee's "regular rate" of pay. 29 U.S.C. § 207(a)(1); D.C. Code § 32-1003(c). Although an employee's regular rate is typically the employee's hourly rate, because Saravia's hourly rate was below the minimum wage, the minimum wage is used instead as the regular rate. *Zaldaña v. Morrogh*, No. 20-3810, 2022 WL 203471, at *2 (D.D.C. Jan. 24, 2022) ("[A]n employee's 'regular hourly rate' must not be lower than the applicable state or local minimum rate." (quoting 29 C.F.R. § 778.5)); *see also* 29 C.F.R. § 778.5 ("Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of [state or local law], the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' . . . must be construed to mean the regular rate at which he is lawfully employed.").[7] This of course makes good sense; an employee's overtime pay should not be a function of an unlawfully low rate of pay for regular hours.

---

[6] Presumably because of a rounding discrepancy, Saravia's calculation comes out to $464.03. Dkt. 35 at 8.

[7] The Court notes that employees paid on a salary basis, versus an hourly basis, are sometimes treated as having agreed to receive that wage, regardless of how many hours they work, under what is known as the "fluctuating workweek method." *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 54–60 (D.D.C. 2006). That method is inapplicable here for at least two reasons: First, "the employer bears the burden of proving that all the requirements for applying the [fluctuating workweek] method are present," *Stein v. Guardsmark, LLC*, No. 12-cv-4739, 2013 WL 3809463, at *3 (S.D.N.Y. July 23, 2013) (internal quotation marks omitted), and no Defendant here has attempted to make such a showing. Second, in general, the fluctuating workweek method is applicable only where "the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in

11

Applying this methodology to the hours Saravia worked and the wages he received, the Court concludes that he is owed $78,532.94 in unpaid wages.[8] Dkt. 35-2 at 1–5 (making the calculation for each week that Saravia worked).[9]

Saravia is also entitled to liquidated damages. Under the FLSA, an employer who fails to pay an employee lawful minimum wages and/or overtime pay is "liable to the employee" for unpaid wages as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Similarly, the DCMWA states that an employer who fails to pay an employee lawful minimum wages or overtime pay must pay the employee unpaid wages "and an additional amount as liquidated damages equal to *treble the amount of unpaid wages*." D.C. Code

---

those workweeks in which the number of hours he works is greatest." *Hunter*, 453 F. Supp. 2d at 58 (quoting 29 C.F.R. § 778.114(a)). Saravia's salary fell well short of this threshold at all times.

[8] This number differs from Saravia's by $0.30, Dkt. 35-2 at 5, which the Court assumes is due to how pennies were rounded. The Court also notes that this number reflects five weeks in which Saravia represents that he did not work, so he claims no unpaid wages for those weeks. *Id.* at 4.

[9] One nuance warrants brief mention. D.C. Code § 32-1308(c)(1) provides that "[a]ny action commenced in a court of competent jurisdiction . . . to enforce any cause of action for unpaid wages or liquidated damages under this chapter . . . must be commenced *within 3 years after the cause of action accrued, or of the last occurrence if the violation is continuous*, or the cause of action shall be forever barred." *Id.* (emphasis added). So, the statute of limitation is three years, but it does not begin to run until either (1) "the cause of action accrue[s]," or (2) "the last occurrence, if the violation is continuous." *Id.* Here, Saravia is seeking damages starting on January 2, 2017, Dkt. 35-2 at 1, but he did not file this suit until January 28, 2020, Dkt. 1 (Compl.). It follows that, if he is held to three years, he would have difficult justifying his claim for compensation for the first four weeks at issue. But because he was *never* paid what he was due during the period in question, he can assert a "continuous" violation, which would allow him to recover for the entire period. Absent any contrary argument from Rui Yu, the Court will assume that this theory of recovery is available.

Finally, the Court notes that the FLSA has a two-year statute of limitations, which is increased to three years for willful violations. 29 U.S.C. § 255(a). Here, Saravia alleges that the violations were willful. Dkt. 22 at 5 (Am. Compl. ¶ 45). But, in any event, as discussed below, his ultimate recovery is appropriately based on the DCMWA, so that statute's three-year statute of limitations governs.

§ 32-1012(b)(1) (emphasis added). "Awards of liquidated damages under the FLSA and DCMWA are not cumulative." *Seo v. Oh*, No. 18-785, 2023 WL 143910, at *2 (D.D.C. Jan. 10, 2023). And, because D.C. law "is more generous to employees" than is Federal law, this Court typically "first assesses whether liquidated damages should be awarded under District of Columbia law" and, if so, does not separately consider whether liquidated damages are also available under the FLSA. *Sanchez v. Devashish Hosp., LLC*, 322 F.R.D. 32, 38 (D.D.C. 2017) (cleaned up) (quoting *Ventura*, 134 F. Supp. 3d at 104); *see also Portillo v. Smith Commons DC, LLC*, No. 20-49, 2022 WL 3354730, at *7 (D.D.C. Aug. 13, 2022) ("Because the Plaintiffs seek recovery under both the FLSA and the DCMWA, the Court will assess liquidated damages under District of Columbia law, given that it provides for more generous liquidated damages."); *Denson*, 2021 WL 4988994, at *3 ("These provisions are not cumulative; '[s]ince D.C. law is more generous to employees on the relevant points, the Court will . . . assess damages under D.C. law and will not award a duplicative amount pursuant to federal law.'" (alterations in original) (quoting *Ventura*, 134 F. Supp. 3d at 104)). A court's discretion to decline to award liquidated damages under the DCMWA is "narrowly drawn," and exists only where the employer has made certain showings of good faith or reasonable mistake, none of which Rui Yu has made here. *Seo*, 2023 WL 143910, at *3; *see also* D.C. Code § 32-1012(b)(2).

Saravia is, accordingly, entitled to collect from Rui Yu unpaid wages plus "liquidated damages equal to three times that amount." *Seo*, 2023 WL 143910, at *3. That value equals $314,131.76: ($78,532.94 + ($78,532.94 * 3)).[10]

---

[10] This number differs from what Saravia requests by $1.20, Dkt. 35 at 9, again presumably because of rounding discrepancies magnified by the multiplier applied to the unpaid wages for purposes of calculating liquidated damages.

13

**B.      Motion for Default Judgment Against Yuan Profit, Jun Ling Xu, and Oscar Xu**

The very same liability calculations would apply as to Yuan Profit, Jun Ling Xu, and Oscar Xu, were the Court to grant a default judgment against them.  The problem is that Saravia's motion for a default judgment with respect to these Defendants contains no analysis whatsoever regarding the entry of a default judgment as a sanction for discovery abuses.  Saravia makes no effort to explain why the extreme remedy of a default judgment is appropriate, and he fails to cite a single case addressing the standard for entry of a default judgment as a discovery sanction.  *See* Dkt. 35.

As explained above, a default judgment is a "sanction of last resort" for discovery violations, and resolution of a case on the merits is much preferred.  *Webb*, 146 F.3d at 971 (quoting *Shea*, 795 F.2d at 1075).  To be sure, the Court can easily imagine how that demanding standard is satisfied here—why a "lesser sanction" will not suffice, and why the "three basic justifications" the D.C. Circuit set forth in *Webb* are satisfied.  *Id.*  But it is not the Court's role to imagine what the moving party might reasonably have argued, particularly in a case in which that party seeks the ultimate sanction.  It is possible that Saravia failed to undertake this effort because he believed that the Court had already concluded that such a sanction is warranted.  But if he construed the Court's order granting him *permission to move* for a default judgment as an indication that the Court *would grant* such a motion without further argument, he was mistaken.  To be clear: Defendants' conduct in this litigation has been entirely unacceptable.  A default judgment may well be merited.  But Saravia must first explain why the *Webb* standard is satisfied.

The Court, accordingly, will permit Saravia to renew his motion for a default judgment against Yuan Profit, Jun Ling Xu, and Oscar Xu.  But, if he does so, he will need to address the

14

*Webb* standard; to offer evidence supporting his request for such an extreme remedy; and to explain why a lesser sanction—including, for example, adverse findings with respect to the matters sought in discovery—would not suffice.[11]

## CONCLUSION

For these reasons, it is **ORDERED** that Plaintiff's motion for default judgment, Dkt. 35, is **GRANTED** in part and **DENIED** in part without prejudice.  The motion is **GRANTED** with respect to Defendant Rui Yu, and it is **DENIED** without prejudice as to Defendants Yuan Profit, Inc., Jun Ling Xu, and Oscar Xu.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 17, 2023

---

[11]  The Court also notes that, at the April 14, 2021 status conference, it explained that, if Saravia intended to move for a default judgment against Oscar Xu, he would "need" to provide some briefing explaining why Xu qualifies as an employer under both District of Columbia and Federal law.  Apr. 14, 2021 Hrg. Tr. (Rough at 3–5).  Saravia's motion for default judgment contains no such analysis.  Any future motion should also rectify this deficiency.